UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————

CHRISTOPHER B.,

               Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

———————————————————————

**DECISION AND ORDER**

22-CV-448S

1.     Plaintiff Christopher B.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits under Title II of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

2.     Plaintiff protectively filed his application with the Social Security Administration on October 29, 2019.  Plaintiff alleged disability beginning December 19, 2018, due to cervical degenerative disc disease, degenerative joint disease of the shoulders, an adjustment disorder, and a pain disorder.  Plaintiff's application was denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

3.     On February 12, 2021, ALJ William Weir held a telephonic hearing (due to the COVID-19 pandemic) at which Plaintiff—represented by counsel—and Vocational Expert Carrol Warren, Ed.D., appeared and testified.  (R.[2] at 11, 35-86.)  Plaintiff was

---

[1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

[2]Citations to the underlying administrative record are designated as "R."

49 years old on the onset date and he had a high school education (R. at 26, 27).  Plaintiff had past work experience as a corrections officer, light exertion work but heavy as performed (R. at 26).

4.      The ALJ considered the case *de novo* and, on March 23, 2021, issued a written decision denying Plaintiff's application for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 8, 9.)  Plaintiff filed a response on January 24, 2023 (Docket No. 10), at which time this Court took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion is **granted**, and Defendant's Motion is **denied**.

6.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is

---

[3]The ALJ's March 23, 2021, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical

3

or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work.  Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.    Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11.    The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the December 19, 2018, onset of disability.  (R. at 13.)  At Step Two, the ALJ found that Plaintiff has the following severe impairments: cervical degenerative disc

4

disease, degenerative joint disease of the shoulders, an adjustment disorder, and a pain disorder.  Id. at 14.  At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.

12.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work except he should not work above shoulder level more than incidentally, i.e. up to 5% of the time.  Plaintiff would need the opportunity to change from sitting, standing, or walking every two hours for at least five minutes while remaining on task.  He can occasionally push and pull.  He has no limits in terms of handling, fingering, feeling, or handling objects directly in front such as on a desk or bench.  He can perform simple, routine tasks and no complex work, which is defined as work involving multiple simultaneous goals or objectives or the need to independently set quantity, quality, or method standards.  (R. at 16.)

13.     At Step Four, the ALJ found Plaintiff cannot perform his past relevant work as a corrections officer.  (R. at 26.) At Step Five, the ALJ found that Plaintiff had additional limitations precluding the full range of light work.  As a result, the ALJ sought the opinion of the vocational expert.  Gen a hypothetical claimant with Plaintiff's age, education, and work experience, the expert opined that this claimant could work as an office helper (light exertion work) or routing clerk (light work)  (R. at 27.)   The ALJ then concluded that Plaintiff was not disabled (R. at 28).

14.     Plaintiff argues that the ALJ's decision was not supported by substantial evidence (Docket No. 8, Pl. Memo. at 19-30).  For the reasons that follow, his arguments

surrounding the sit/stand option (and potentially his limitations in pushing and pulling) require remand.

15.     Under the Social Security standards applicable for Title II applications after March 2017 for evaluating medical evidence, the agency considers the persuasiveness of a medical opinion, 20 C.F.R. § 404.1520c(a).  The agency considers the supportability and consistency of the opinions as the most important factors, id. § 404.1520c(c)(1), (2), (b)(2).  The ALJ must explain his approach with respect to supportability and consistency when considering a medical opinion, Melissa F. v. Comm'r, No. 20CV1363, 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021)(Carter, Mag. J.) (citing, e.g., 20 C.F.R. § 404.1520c(b)).  The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive the opinion will be, 20 C.F.R. § 404.1520c(c)(2).  The ALJ, however, is not required to articulate how each medical opinion is considered, 20 C.F.R. § 404.1520c(b)(1).

16.     First, Plaintiff argues that the ALJ erred in assessing the opinion of treating source, Liane Kirchberger, P.A., of Western New York Immediate Care (Docket No. 8, Pl. Memo. at 19-22, 3-4; see R. 1556, 1558).

17.     Ms. Kirchberger examined Plaintiff on October 8, 2018 (R. at 1556), and noted in an Estimated Physical Capabilities Form for New York State Employees that, due to cervical strain, Plaintiff could occasionally lift up to 10 pounds (R. at 1558).

18.     Plaintiff argues that Ms. Kirchberger as a physician assistant was an acceptable medical source, 20 C.F.R. § 404.1502(a)(8), that the ALJ erred in not considering her opinion for its supportability and consistency (Docket No. 8, Pl. Memo. at 20-21, 20 n.4).

19.     Plaintiff claims that the ALJ attributed Ms. Kirchberger's opinion to physical therapist Joseph Robinson (R. at 1557, 21, 23), with the ALJ concluding that Mr. Robinson advised light duty for Plaintiff (R. at 23; cf. R. at 1558) and finding this opinion to be partially persuasive (R. at 23; Docket No. 8, Pl. Memo. at 20).  Plaintiff argues that the two opinions were separate but somehow combined as an exhibit (Docket No. 8, Pl. Memo. at 20), although his counsel submitted both opinions together as a single exhibit as records from "Immediate Care" (R. at 1555-58).

20.     Defendant responds that Ms. Kirchberger examined Plaintiff only twice (Docket No. 9, Def. Memo. at 6, 23; R. at 1558, 510-31).  Further, Defendant argues that the ALJ need not render findings that perfectly correspond to any opinion in the record (Docket No. 9, Def. Memo.  at 7, quoting Schillo v. Kijarazi, 31 F.4th 64, 71 (2d Cir. 2022) (quoting Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013 (summary Order)).  Defendant also notes that the ALJ has discretion to resolve genuine conflicts in the evidence (id. at 8, citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2013); Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998)).

21.     Defendant explains that the ALJ's misattribution of the opinion from Ms. Kirchberger to the physical therapist Mr. Robinson is harmless error (id. at 22-23).

22.     Defendant then argues that the ALJ properly evaluated Ms. Kirchberger's October 2018 assessment because of its inconsistency (for example, the lifting restrictions) with the evidence in the record and Plaintiff's self-reports (id. at 23).

23.     First, the ALJ's misattribution of Ms. Kirchberger's opinion to Mr. Robinson is harmless error, see David C. v. Comm'r, No. 21CV6480, 2023 WL 2379007, at *8 n.3

(W.D.N.Y. Mar. 6, 2023) (Wolford, C.J.); Ortiz v. Colvin, 298 F. Supp. 3d 581, 591 (W.D.N.Y. 2018) (Larimer, J.).

24.    Next, examining Ms. Kirchberger's findings, Plaintiff first saw Ms. Kirchberger on September 17, 2018, for a Workers' Compensation visit following a work injury, an August 22, 2018, altercation with an inmate (R. at 512; Docket No. 8, Pl. Memo. at 3).  Plaintiff saw her again on October 1, 2018 (R. at 510).

25.    Reviewing the Estimated Physical Capabilities Form (R. at 1558), the ALJ found it only partially persuasive (R. at 23).  First, the ALJ found the reaching, lifting, and carrying limitations in that report was not consistent with or supported by Plaintiff's self-reports in the disability pain indexes or his activities of daily living.  Second, the ALJ found that the walking limitations were consistent with and supported by normal gait findings. Third, the ALJ found vague limitations regarding repetitive pushing and pulling and not well defined, while observing that the record showed that Plaintiff was able occasionally to push and pull.   (R. at 23.)   The ALJ concluded that the vocational expert's representative occupations remain viable for Plaintiff (R. at 23).

26.    Ms. Kirchberger examined Plaintiff on September 17, 2018 (R. at 512-13), and October 1, 2018 (R. at 510-11) for workers' compensation evaluations just prior to rendering the Estimated Physical Capabilities Form on October 8, 2018 (R. at 1558). These examinations were following Plaintiff's injury on August 22, 2018, during an altercation with an inmate (R. at 512, 510).  On September 17, while Plaintiff has neck pain, he did not have neck stiffness, neck swelling, or swollen glands (R. at 512).  Plaintiff complained of pain at a range of 3 (on a scale of 0-10) going up to 8 or 9 (R. at 512). Ms. Kirchberger found that Plaintiff had tenderness to palpitation to paravertebral muscles

from C3 to T2 with no obvious deformities.  Plaintiff also had decreased range of motion of his neck due to pain in all motions.  (R. at 512.)  Ms. Kirchberger concluded that Plaintiff suffered cervical strain (R. at 513).  Ms. Kirchberger prescribed ice and heat, ibuprofen (R. at 512, 513).

27.     On October 1, 2018, Plaintiff stated to Ms. Kirchberger that his pain was at 0 (on the 10-point scale) going up to 8 or 9 recently (R. at 510).  Plaintiff complained that his pain was aggravated by unspecified movement and "sitting upward" (R. at 510, 512) alleviated by ice and heat but with little overall improvement (R. at 510).  Plaintiff had scheduled an appointment with a specialist on October 31, 2018 (R. at 510, 512), after the October 8 evaluation.  He complains of chronic numbness to his arms from shoulder injury (R. at 510).  Ms. Kirchberger examined Plaintiff and did not observe neck swelling, joint pain, redness, stiffness, or swelling, or tingling (R. at 510).  For Plaintiff's cervical strain, Ms. Kirchberger continued prescription for ibuprofen, ice, and elevation (R. at 511).  Ms. Kirchberger said Plaintiff could return to work with restrictions (R. at 511) citing but possibly not including a separate form with the restrictions.  The possible form may be the October 8, 2018, Estimated Physical Capabilities Form (R. at 1558).

28.     Ms. Kirchberger's two examinations do not indicate lifting restrictions.  From this record, the ALJ properly could conclude that Ms. Kirchberger's opinion warrants partial weight.    Therefore,  Plaintiff's  contrary  argument  for  consideration  of Ms. Kirchberger's opinion is rejected.

29.     Therefore, this Court denies Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) on this ground.

30.     Next, Plaintiff argues that the ALJ's finding that Plaintiff needed opportunity to change position (sit, stand, or walk) every 2 hours for at least 5 minutes (R. at 16) was not supported by substantial evidence (Docket No. 8, Pl. Memo. at 22-26).  Plaintiff found no evaluation or opinion in the record to support the ALJ's specific change of position finding (id. at 23).  He argues that the specific RFC must be based on evidence in the record not on ALJ's own surmise (id. at 22), see Heckman v. Comm'r, No. 18CV6032, 2019 WL 1492868, at *3 (W.D.N.Y. Apr. 4, 2019) (Vilardo, J.).

31.     Plaintiff points out that Ms. Kirchberger opined that Plaintiff could sit, stand, and walk continuously but with rests (R. at 1558; Docket No. 8, Pl. Memo. at 23-24).  In Dr. Cally's October 10, 2018, evaluation, he did not find a sit/stand option (R. at 583-84; Docket No. 8, Pl. Memo. at 24).

32.     Plaintiff deems the closest finding of sit/stand option was from chiropractor Dr. Aaron Boedecker of March 4, 2021 (R. at 1769. 25, 26; Docket No. 8, Pl. Memo. at 25).  But Plaintiff denies Dr. Boedecker's finding supports the change of position finding (Docket No. 8, Pl. Memo. at 25).  Plaintiff concludes that rather than the ALJ adopt his own opinion, the ALJ should have remanded to obtain updated medical opinions on his sit/stand limitations (id. at 26, citing Brian K. v. Comm'r, 524 F. Supp. 3d 149, 156 (W.D.N.Y. 2021) (Wolford, J.)).

33.     Defendant responds that Plaintiff's treatment record and self-reporting to Dr. Franco Vigna supported the ALJ's sit/stand option finding from plaintiff could sit or drive for up to 60 minutes, stand for 30-60 minutes, and walk for 30 minutes (Docket No. 9, Def. Memo. at 13-14; R. at 600, 767, 1224).   Defendant also points to Dr. Boedecker's sit and stand findings (Docket No. 9, Def. Memo. at 16; R. at 1604).

34.     Plaintiff later replies that the ALJ provided no evidence to support the "very specific restriction" on the sit/stand option (Docket No. 10, Pl. Reply Memo. at 6).  Plaintiff urges this Court to not accept defendant's post hoc argument and reverse the ALJ's decision (id.).

35.     Dr. Boedecker produced a Treating Physician's Functional Capacity Assessment on January 7, 2021, and found that Plaintiff could stand and or walk three to four hours, noting that Plaintiff requires the ability to sit to stand move and stretch (R. at 1604).

36.     The ALJ asked Dr. Boedecker to confirm the truth of his finding about Plaintiff's need to frequently change position (R. at 478).   On March 4, 2021, Dr. Boedecker addressed the ALJ's clarification queries (R. at 478) and supplemented his finding, explaining that Plaintiff became "very uncomfortable when staying in specific positions for even short periods of time including sitting, standing, laying down, reclining in a chair and can exacerbate the symptoms that he felt since his injury" (R. at 1769). Dr. Boedecker concluded that Plaintiff needs to change positions "to remain at his average level of discomfort and keep it from becoming worse" (R. at 1769). Dr. Boedecker believed this "to be true at the time of filling out the paper.  The patient's condition may have recently changed as to my knowledge he has now had shoulder surgery" (R. at 1769).

37.     During the ALJ's hearing, Plaintiff's counsel argued that Dr. Boedecker's finding limiting Plaintiff to 3-4 hours standing, walking, and sitting precludes light work (R. at 26, 82).

38.     The ALJ found that Dr. Boedecker's findings were consistent with and supported by the record (R. at 26).

39.     Defendant counters that this Court and the Second Circuit have upheld "highly specific RFC findings" that did not correspond to a medical opinion (Docket No. 9, Def. Memo. at 9), where there is sufficient evidence in the record to support the ALJ's finding (id., citing Cook v. Comm'r of Soc. Sec., 818 F. App'x 108, 109 (2d Cir. 2020) (summary Order); Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) (summary Order)).  Defendant claims that the ALJ gave Plaintiff the benefit of the doubt and included additional limitations in the stand/sit option beyond those found by Drs. Boedecker and J. Lawrence (Docket No. 9, Def. Memo. at 18, 14).

40.     The issue here is how the ALJ could conclude that Plaintiff needed the ability to change positions every 2 hours.  The medical evidence shows that Plaintiff requires changing position for sitting, standing, and walking, but no opinion for the specific timing found by the ALJ.  The limitation acknowledged by the ALJ is from the ALJ's interpretation and surmise of the medical evidence that is not authorized, Brian K., supra, 524 F. Supp. 3d at 156; Heckman, supra, 2019 WL 1492868, at *3.

41.     Therefore, this Court grants Plaintiff's Motion for Judgment on the Pleading (Docket No. 8) on positional change.  As in Brian K., supra, 524 F. Supp. 3d at 156, the ALJ should have obtained updated medical opinion evidence on Plaintiff's functioning and the frequency of changing positions and a sit/stand option.

42.     Plaintiff finally argues that the ALJ's push and pull finding also is not supported by substantial evidence (Docket No. 9, Pl. Memo. at 27-30).  He claims that the record established more limited pushing and pulling than found by the ALJ (id. at 27).

43.     The ALJ found in the RFC that Plaintiff can occasionally push and pull (R. at 16).  The basis for this finding was the independent medical examination of orthopedist Dr. Donald Cally on October 10, 2018, that Plaintiff could perform light or modified duty which did not involve heavy lifting, pushing, pulling, or carrying or require the use of force (R. at 584, 23).

44.     The ALJ considered Dr. Cally's undated Estimated Physical Capabilities Form for New York State Employees that Plaintiff could sit for 8 hours in a workday but could stand or walk for only 1 hour, could not push or pull, but could no longer restrain combative clients (R. at 1649, 23).  Dr. Cally reported there that Plaintiff had no known problems that would interfere with Plaintiff returning to work, opining that he could resume work in January 2019 (R. at 1649).

45.     The ALJ found both of Dr. Cally's opinions were partially persuasive, stating that the "never" findings on the capabilities form were internally inconsistent with other findings in that form and evidence in the record and Plaintiff's self-reported activities of daily living, concluding the form was unpersuasive (R. at 23).  The ALJ found the October 2018 opinion, however, was "far more persuasive" because the heavy lifting, pushing, pulling, or carry limitations are consistent with the record and Dr. Cally's examination (R. at 23).

46.     The parties also differ on the degree of limitation for Plaintiff's ability to push and pull.  Plaintiff argues that the ALJ misconstrued Dr. Cally's push and pull finding, concluding that Dr. Cally found that Plaintiff could not push and pull at all, at least prior to January 1, 2019 (Docket No. 8, Pl. Memo. at 29).  The two jobs the vocational expert opined could be performed on these facts, office helper or routing clerk (R. at 27), Plaintiff

13

contends require the ability to push and pull that Plaintiff could not perform (Docket No. 8, Pl. Memo. at 29).   Furthermore, Dr. Cally's Estimated Physical Capabilities Form was more restrictive than the RFC (id. at 28).   Finally, Plaintiff points to his subsequently scheduled (but rescheduled due to COVID-19 pandemic restrictions) shoulder surgery and treatment (id.).

47.     Defendant contends that Dr. Cally's October 2018 finding is less restrictive than the RFC (Docket No. 9, Def. Memo. at 20).   Defendant also points out that Dr. Cally's undated form showed that Plaintiff could return to work in January 2019, two weeks after the December 19, 2018, onset date, thus these limitations were temporary and not meeting the twelve-month durational requirement for disability (Docket No. 9, Def. Memo. at 22).

48.     With the remand ordered above for the sit/stand limitation and the differing interpretation of Dr. Cally's opinions, the ALJ also could reexamine the push and pull findings.   On the one hand, Dr. Cally opined that Plaintiff could not repetitively push or pull but, on the other hand, Dr. Cally found that Plaintiff could return to full duty on or after January 1, 2019 (R. at 1649).   Dr. Cally earlier found that Plaintiff could not engage in heavy lifting, pushing, or pulling (R. at 584).   On remand, the ALJ could address this apparent inconsistency.

49.     This Court also notes that Ms. Kirchberger in her Estimated Physical Capabilities form also found that Plaintiff could not push or pull as repetitive action (R. at 1558).   Thus, the evidence in this record could lead to a contrary finding on Plaintiff's ability to push and pull.

50.      Therefore, this Court grants Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) rejecting the push and pull findings of the ALJ.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        August 17, 2023
              Buffalo, New York


                                      s/William M. Skretny
                                     WILLIAM M. SKRETNY
                                   United States District Judge